UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LAWRENCE T. BROWN,
Indiana DOC #250459

      Plaintiff,

v.                                                                Case No.  3:17cv691/MCR/CJK

BAY COUNTY COMMISSIONERS, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, has filed a third amended complaint asserting civil rights claims under 42 U.S.C. § 1983, and state law tort claims.  (Doc. 22).  The undersigned has screened the complaint pursuant to 28 U.S.C. § 1915A, and concludes that plaintiff's federal claims against Bay County, former Bay County Sheriff Frank McKeithen and Detention Officer Chromer should be dismissed for failure to state a claim; that the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against these defendants; and that plaintiff's federal and state law claims against the remaining seven defendants should be remanded to the undersigned for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Indiana penal system currently confined at Putnamville Correctional Facility in Greencastle, Indiana.  Plaintiff was a pretrial

detainee confined at the Bay County Jail in Panama City, Florida, at the time of the events giving rise to this lawsuit.  Plaintiff's third amended complaint names ten defendants:  the Bay County Board of County Commissioners, former Bay County Sheriff Frank McKeithen, Bay County Sheriff's Office Investigator David Delaney, and seven Bay County Jail officials:  Chief Security Officer Rigby, Lieutenant Lilly, Corporal Joe Maestro, Sergeant Davis, Sergeant Pucket, Detention Officer Lawrence Nelson and Detention Officer Chromer, Jr.  (Doc. 22).  Plaintiff's claims are based on a use of force incident that occurred at the Bay County Jail on October 31, 2015, and plaintiff's arrest and criminal prosecution after he reported the incident.  The following allegations are drawn from plaintiff's third amended complaint (doc. 22) and sworn declaration with exhibits (doc. 23).[1]

The Use of Force

Plaintiff alleges that on October 31, 2015, at 9:30 p.m., he had a "verbal dispute" with defendant Maestro because plaintiff demanded to speak to Officer Jackson about access to his legal materials but Maestro instead contacted defendant

---

[1] Plaintiff's third amended complaint, declaration and exhibits were mailed in the same envelope, but docketed separately.  (Docs. 22, 23).  The court considers plaintiff's declaration and exhibits, which are referenced within the complaint, to be attachments to and therefore a part of the third amended complaint.  *See* Fed. R. Civ. P. 10.

Lilly.[2]  (Doc. 22 ¶¶ 32, 36; Doc. 23 ¶¶ 35, 38).  Plaintiff became "upset" and "frustrated" that Maestro involved Lilly, and expressed his frustration by continually knocking on his food flap.  (Doc. 22 ¶ 35; Doc. 23 ¶ 40).  Plaintiff ceased knocking when he observed Lilly on the phone outside the unit, having surmised that Lilly was talking to defendant Rigby, the Chief Security Officer.  (Doc. 22 ¶ 35; Doc. 23 ¶ 41).  After Lilly hung up, he came to plaintiff's cell and asked what the problem was.  (Doc. 22 ¶ 36; Doc. 23 ¶ 43).  Plaintiff responded that he was trying to speak to Jackson about gaining access to his legal material to prepare for a November 13, 2015, court hearing.  (Doc. 22 ¶ 36; Doc. 23 ¶ 44).  Lilly informed plaintiff that he was wasting Lilly's time because Rigby already addressed plaintiff's request for the material, and that Rigby authorized Lilly to use force against plaintiff if he failed to comply with orders to be quiet.  (Doc. 22 ¶ 37; Doc. 23 ¶ 45).

Plaintiff responded that he would stop knocking on his food flap, but would not stop complaining because it was his constitutional right to complain.  (Doc. 22 ¶ 38; Doc. 23 ¶ 46).  Lilly warned plaintiff that if he was not quiet, Lilly would "shut [him] up".  (Doc. 22 ¶ 39; Doc. 23 ¶ 47).  Lilly then instructed Maestro to retrieve

---

[2] According to plaintiff, the legal material at issue was a CD-ROM.  Plaintiff was representing himself in his criminal case and, through discovery, received a CD-ROM from the assistant state attorney on October 29, 2015.  Defendant Rigby authorized plaintiff to view the CD on a laptop, but ultimately confiscated the CD after plaintiff touched the laptop without the supervising officer's authorization.  (Doc. 22 ¶¶ 29-30; Doc. 23 ¶¶ 28-32).

restraints. (*Id.*). When Maestro returned with restraints, Lilly called for defendants Davis and Pucket to assist. (Doc. 22 ¶ 39; Doc. 23 ¶ 48). Lilly gave plaintiff three verbal warnings to stop talking and, when plaintiff continued "advising" Lilly of his constitutional rights, Lilly instructed Maestro, Davis and Pucket to enter plaintiff's cell to restrain him. (Doc. 22 ¶ 40; Doc. 23 ¶ 49). The use of force was filmed by defendant Officer Nelson. (Doc. 23 ¶ 53). Defendant Officer Chromer was in the officer's station "monitor[ing] the screen." (*Id.*).

When Lilly, Maestro, Davis and Pucket entered plaintiff's cell, plaintiff was seated on the floor wearing a shroud. (Doc. 22 ¶ 41; Doc. 23 ¶¶50-52). Maestro voiced multiple commands to "stop resisting" (even though plaintiff was not resisting). (Doc. 22 ¶ 43; Doc. 23 ¶ 51). Maestro then collapsed his "full weight" onto plaintiff, removed plaintiff's shroud (rendering him naked), and pinned plaintiff on his stomach, with Lilly, Davis and Pucket's assistance. (Doc. 22 ¶¶ 42-44; Doc. 23 ¶¶ 52). Defendants Davis and Pucket began shackling plaintiff's legs while Lilly and Maestro pinned plaintiff's arms behind his back. (Doc. 23 ¶ 54). During the shackling process, Maestro "sexually battered" plaintiff as follows:

> At the same time Plaintiff felt defendant Maestro['s] hands resting on his buttocks which cause[d] him to become uncomfortable.

> The Plaintiff then felt defendant Maestro['s] hands clutch his buttocks while he stated stop resisting in which the plaintiff who was

unable to resist because he was completely restrained stated that he was not resisting.

The Plaintiff then felt Defendant Maestro['s] finger insert [into] his rectum which made him scream out in pain and yell for the defendant to remove his finger form his rectum.

Defendant Maestro ignored the Plaintiff's pleads and continued inserting his finger deeper into the Plaintiff's rectum.

The Plaintiff yelled four or more times for the plaintiff [sic] to remove his finger from his rectum and when the defendant ignored his pleads [sic] and continue[d] sodomizing the plaintiff he began yelling "rape" hoping to alert someone who could help him.

(Doc. 22 ¶¶ 45-49; *see also* Doc. 23 ¶¶ 55-61).

When plaintiff yelled "rape", Lilly punched him in the face and tried to suffocate him. (Doc. 22 ¶¶ 50-52; Doc. 23 ¶¶ 62-64). Lilly then instructed Maestro, Davis and Pucket to turn plaintiff onto his back. Lilly got on top of plaintiff and attempted to strangle and suffocate him again. (Doc. 22 ¶53-54; doc. 23 ¶¶ 64-66). When plaintiff wrestled his mouth free, Lilly punched him in the face five times, stating "you brought this on yourself and next time keep your mouth shut." (Doc. 22 ¶ 55; Doc. 23 ¶ 68). The alleged assault ceased when nurses entered the module. (Doc. 23 ¶ 69). Plaintiff was left naked and "hog-tied" in his cell for 9 hours, forcing him to defecate and urinate on himself. (Doc. 22 ¶ 56; Doc. 23 ¶ 70). At 6:30 a.m. the following morning, an officer removed the leg restraints. (Doc. 23 ¶ 70). Upon using the toilet, plaintiff discovered that he was bleeding from his rectum and was

taken to the Bay County Medical Center.   (Doc. 23 ¶¶ 72-73).   Plaintiff was evaluated and returned to the Jail.  (Doc. 23 ¶ 75).

The foregoing allegations form the basis of plaintiff's Eighth and Fourteenth Amendment excessive force claims against Maestro, as well as state law tort claims of sexual assault, assault, battery, sexual battery and intentional infliction of emotional distress.   (Doc. 22, p. 14 ¶¶ 62, 64).   Plaintiff asserts Fourteenth Amendment excessive force and failure to intervene claims against Rigby, Lilly, Davis, Pucket, Nelson and Chromer, as well as state law tort claims of assault, battery and intentional infliction of emotional distress.  (*Id*. ¶¶ 65, 67).  Plaintiff asserts First Amendment retaliation claims against Rigby and Lilly.  (*Id*., p. 15 ¶ 69).

<u>The Arrest and Criminal Charge</u>

Plaintiff filed a complaint about the use of force and sexual assault with the Internal Affairs section of the Bay County Sheriff's Office.   (Doc. 22 ¶ 58). Defendant Investigator Delaney investigated the complaint. (*Id*.  63).  On November 2, 2015, Delaney obtained a warrant for plaintiff's arrest on the charge of "False Report of Sexual Battery Against a Corrections Officer", in violation of Florida Statutes Section 794.011(10).  (Doc. 22 ¶ 58; Doc. 23 ¶ 76 and Attach.).  Delaney's affidavit read:

> Your affiant, Investigator David Delaney with the Bay County Sheriff's
> Office, states that the defendant, Lawrence Tyron Brown, did commit

the offense of "False Report of Sexual Battery Against a Corrections Officer" to wit;

The defendant, Lawrence Brown, was incarcerated in the Bay County Jail Facility on October 31, 2015, housed in Confinement Dormitory Pod #2 Cell #8. At approximately 21:38 hours the same date, additional restraints had to be applied to defendant due to his incessant outbursts and disruptive behavior. During the course of this use of [sic] this encounter, the defendant, Lawrence Brown, physically resisted to the point where five detention officers were needed to control the defendant. Also during this incident, the defendant stated that the victim, Detention [name redacted] sexually battered the defendant by sodomizing Lawrence Brown, by forcefully inserting his finger into defendant[']s rectum.

On November 01, 2015, the defendant, Lawrence Brown, gave a sworn taped statement asserting the same allegations of sexual battery against the victim, [name redacted].

During the course of this investigation it was determined that the allegations made by the defendant were false, based on the video evidence of the incident, as well as sworn witness testimony, and medical evaluations.

The defendant, Lawrence Brown's, actions are in violation of FSS 794.011(10).

(Doc. 23, Attach.). Plaintiff alleges that "on information and belief no probable cause existed for this new charge" and that Delaney notified him of the charge in front of other inmates "to discourage other inmates from coming forward and retaliation for [plaintiff's] complaint." (Doc. 23 ¶ 77). The charge against plaintiff was nolle prossed on May 23, 2015. (Doc. 22 ¶ 60; Doc. 23 ¶ 79).

The foregoing allegations form the basis of plaintiff's First Amendment retaliation claim against Delaney, a Fourteenth Amendment excessive force claim against McKeithen, and Fourth Amendment false arrest claims against Delaney, McKeithen and Bay County. (Doc. 22, pp. 15-16 ¶¶ 69, 71, 74). Plaintiff also asserts state law tort claims against these defendants for false imprisonment and malicious prosecution. (Doc. 22, p. 15 ¶ 71). As relief, plaintiff seeks millions of dollars in damages.

## DISCUSSION

Because plaintiff was a prisoner at the time he initiated this lawsuit (*see* doc. 1), the court is required to review plaintiff's complaint and dismiss any portion of it that fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(a) and (b). A claim is subject to dismissal for failure to state a claim if it would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal. *Id.*; *see also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that is, "across the line from conceivable to plausible." *Id.* at 570. As the Court reiterated in *Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In determining whether the complaint states a plausible claim for relief, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir. 1994). Mere "labels and conclusions", however, are not accepted as true. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding

that courts must follow the Supreme Court's "'two-pronged approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (*quoting Iqbal*, 556 U.S. at 679)).  Similarly, a pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A complaint may also be dismissed for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *see also Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *Jones v. Bock*, 549 U.S. 199, 215 (2007) (reiterating that principle).

<u>Claims Against Bay County</u>

Plaintiff's claims against Bay County are contained in Count V.  (Doc. 22, p. 15 ¶ 71 (Count V)).  Plaintiff asserts a Fourth Amendment claim for false arrest, and state law claims for false imprisonment and malicious prosecution.  (*Id.*).  Plaintiff was advised in a previous amend order of the requirements for stating a facially plausible § 1983 claim against a municipality.  (*See* Doc. 11).

In evaluating § 1983 claims against municipalities, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held

liable solely for the actions of its employee," because "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405, 415 (1997).  To impose municipal liability under § 1983, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  The custom or policy must be the "moving force" behind the constitutional deprivation for a court to find sufficient causation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978).

Plaintiff's sole allegation against Bay County is that "[t]he charge was filed on behalf [of] the Bay County Sheriff office a [sic] agent of the Bay County Commissioners."  (Doc. 23 ¶ 76).  The arrest warrant affidavit establishes that it was Investigator Delaney who obtained the arrest warrant.  (Doc. 23, Attach.).  Delaney's status as an employee of the BCSO, or "agent" of the County, does not provide a plausible basis to hold the County liable under § 1983.  *Monell*, 436 U.S. at 694.  There is no factual basis in plaintiff's complaint, nor is there a legal basis in Florida law, to infer that Investigator Delaney was a final policymaker of the County, or that

the County caused or officially sanctioned Delaney's decision to arrest plaintiff.  *See Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) ("Only those officials who have final policymaking authority may render the municipality liable under § 1983".).  Plaintiff's conclusory reference in his demand for relief – that Bay County "fail[ed] to train and institute[ed] a custom or practice of using excessive force by hog tying inmates for unnecessary reasons" (doc. 22, p. 17) – does not address the arrest.  Even if it did, a wholly conclusory "failure to train" allegation does not "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  Plaintiff's § 1983 claim against Bay County should be dismissed, and the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against the County.

<u>Claims Against Former Bay County Sheriff Frank McKeithen</u>

Plaintiff asserts a Fourth Amendment claim for false arrest and a Fourteenth Amendment claim for excessive force against former Sheriff McKeithen.  (*Id*. ¶¶ 71, 74 (Counts V and VI)).  As a supervisory official, former Sheriff McKeithen is liable under § 1983 for the unconstitutional acts of his subordinates only if he personally participated in the allegedly unconstitutional conduct, or if his actions were causally connected to the alleged constitutional deprivation.  *See West v. Tillman*, 496 F.3d 1321, 1328 (11th Cir. 2007).  A causal connection may be shown by evidence of (1)

"a custom or policy that results in deliberate indifference to constitutional rights," (2) "facts that support an inference that the supervisor[ ] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," or (3) "a history of widespread abuse" that notified the supervisor of the need to correct the alleged deprivation, but he failed to do so. *Id*. at 1328-29 (quotation marks, citation, and brackets omitted).

Plaintiff does not allege that McKeithen ordered, or personally participated in, the October 31, 2015, use of force or plaintiff's November 2, 2015, arrest. McKeithen is mentioned nowhere in the forty-two paragraphs of plaintiff's factual allegations. (Doc. 22 ¶¶ 19-60). Plaintiff's conclusory statement in Count VI that McKeithen "violated Plaintiff's Fourteenth Amendment right by condoning the practice of using excessive force on inmates by hog tying them without provocation or real need" (doc. 22 ¶ 74), is merely a "formulaic recitation of the elements" of a claim for supervisory liability under § 1983. Plaintiff fails to include sufficient factual content to hold McKeithen liable for the alleged assault or false arrest. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's § 1983 claims against McKeithen should be dismissed for failure to state a claim, and the

court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against him.

Claims Against Detention Officer Chromer, Jr.

Plaintiff asserts a Fourteenth Amendment excessive force claim against defendant Officer Chromer, as well as state law claims for sexual assault, assault, battery and intentional infliction of emotional distress. (Doc. 22, p. 15 ¶ 67 (Count III)). Plaintiff's theory of liability is that Chromer "fail[ed] to intervene during the sodomizing, choking, strangling, punching and hog typing of the Plaintiff without provocation or need. . . ." (*Id*.).

"If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." (internal quotation marks and citation omitted)). But it must also be true that the non-intervening officer was able to intervene yet failed to do so. *Priester v. City of Rivera Beach*, Fla., 208 F.3d 919, 924 (11th Cir. 2000); *see also Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998) (holding that a

failure to intervene claim requires the allegations to include facts showing the necessity or real opportunity for the defendant-officer to intervene in a fellow officer's unlawful conduct).

The only mention of defendant Chromer in plaintiff's forty-two paragraphs of factual allegations is this single sentence: "During the entire incident Sergeant Davis, Pucket, officer Nelson and Chromer did not intervene or attempt to help the Plaintiff." (Doc. 22 ¶ 57). Plaintiff's supporting declaration adds that Chromer "monitor[ed] the screen from the officer['s] station." (Doc. 23 ¶ 53). Plaintiff concedes that Chromer was not present at or near his cell during the use of force; rather, he was in the officer's station. Plaintiff's allegations do not reasonably support an inference that Chromer's screen in the officer's station captured events occurring inside plaintiff's cell. Nor do the allegations suggest that Chromer had the opportunity to effectively intervene from inside the officer's station. Plaintiff's § 1983 claims against Chromer should be dismissed for failure to state a claim, and the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against him.

Based on the foregoing, it is respectfully RECOMMENDED:

1. That plaintiff's § 1983 claims against the Bay County Board of County Commissioners, former Sheriff Frank McKeithen and Detention Officer Chromer,

Jr., be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915A, for failure to state a claim upon which relief may be granted.

2.  That the court decline to exercise supplemental jurisdiction over plaintiff's state law claims against Bay County, McKeithen and Chromer.

3.  That this case be remanded to the undersigned for further proceedings on plaintiff's § 1983 and state law tort claims against defendants Delaney, Rigby, Lilly, Maestro, Davis, Pucket and Nelson.

At Pensacola, Florida this 18th day of April, 2018.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.